FILED
at ___ O'clock & ___ min ___ M
JUL 23 2008
United States Bankruptcy Court
Columbia, South Carolina (33)

ENTERED
JUL 2 3 2008
KPD

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 05-07146-JW |
| | Chapter 13 |
| Paul Joseph Burretto and Deborah Sue Burretto, | ORDER |
| Debtor(s). | |

This matter comes before the Court on Motion for Relief from the Automatic Stay ("Motion") filed by Litton Loan Servicing, L.P. ("Litton") and Motion to Dismiss Motion for Relief From Stay ("Dismissal Motion") filed by Paul Joseph Burretto and Deborah Sue Burretto ("Debtors"). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## FINDINGS OF FACT

1.  Debtors filed a petition for relief under chapter 13 of the Bankruptcy Code on June 22, 2005 with the assistance of their attorney, John R. Cantrell, Jr. ("Cantrell").

2.  Contemporaneous with their petition, Debtors filed schedules and a statement of financial affairs. In these sworn documents, Debtors assert that Litton is a creditor secured by a first mortgage on their residence and that Debtors have made pre-petition payments to Litton.

3.  Debtors filed a chapter 13 plan on July 7, 2005 ("Plan"). Paragraph 4(e) of Debtors' plan provides, "[t]he following payments to mortgage creditors are current and the debtor(s) will continue making regular payments directly to: Litton Loan Servicing LP."

---

[1] To the extent any of the Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law constitute Findings of Fact, they are so adopted.

4. Debtors' Plan was confirmed by order of the Court on August 12, 2005 and is binding as to all parties.

5. On September 8, 2005, a proof of claim was filed for the first mortgage on Debtors' residence. The claim was filed by JP Morgan Chase Bank National Association, as Trustee, C-BASS Mortgage Loan Asset-Backed Certificates, Series 2005-CB4, its successors or assigns ("JPM"). The proof of claim indicates that Litton is the agent for the holder of the mortgage and designates Litton as an agent to receive notices in this bankruptcy case.

6. Debtors have never filed an objection to the proof of claim but have performed in their Plan for a period of several years by paying Litton on the first mortgage.

7. On February 14, 2008, Debtors filed a Motion for Moratorium indicating that they were delinquent in their mortgage payments.

8. On June 17, 2008, Litton filed the Motion, on behalf of the current holder of the note and mortgage, pursuant to 11 U.S.C. § 362(d)(1) and (d)(2) on grounds that Debtors failed to make regular post-petition payments for several months and have failed to provide adequate protection.

9. Rather than object to the Motion and offer a competing certification of facts as set forth in SC LBR 4001-1-(a)(3), Debtors, through counsel, filed the Dismissal Motion asserting that Litton lacked standing to bring the Motion and that Litton must "prove proper endorsement, transfer, and acceptance of the Note throughout the entire chain of title in order to be in lawful possession of the Note and Mortgage." The Dismissal Motion did not dispute the assertion that Debtors have failed to pay according to their confirmed Plan or as asserted in Litton's certification of facts and Motion.

10. On the business day prior to the hearing on the Motion, Cantrell requested a continuance on grounds that Mrs. Burretto was under a doctor's order to not travel due to a recent surgery. The Court denied Debtors' request for a continuance since the Dismissal Motion presented a legal argument and did not challenge the payment default by Debtors.

11. The Court held a hearing on the Motion on July 14, 2008. Counsel for Debtors and Litton appeared, but neither Mr. Burretto nor a representative from Litton appeared. Immediately prior to the hearing, Cantrell submitted to Litton's attorney proof of a payment to Litton that was allegedly not credited by Litton to the loan.[2]

## CONCLUSIONS OF LAW

**I.  Litton Has Standing to Bring the Motion**

"It is well-established that principles of *res judicata* and collateral estoppel apply to standing determinations." Vandeusen v. Adams, 2007 WL 2891487, *2, n.3 (D.S.C. Sept. 28, 2007) (citing Ins. Corp. of Ireland v. Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). Litton has standing to bring the Motion.[3] See In re Woodberry, 383 B.R. 373, 379 (Bankr. D.S.C. 2008) ("[i]t seems the better view that a loan servicer, with a contractual duty to collect payments and foreclose mortgages in the event of default, has standing to move for relief from stay in the Bankruptcy Court"). Litton was identified as the proper party in interest to receive mortgage payments in the schedules and statements submitted by Debtors and in the confirmed Plan. The Plan represents a new contractual agreement between Debtors and their creditors. See In re Edmunds, 350 B.R. 636, 645 (Bankr. D.S.C. 2006). Debtors have recognized Litton as the proper party in interest to receive payment and 11 U.S.C. § 1327(a) is

---

[2] The copy of a check was seen by the Court but was not submitted into evidence.
[3] Debtors raise the issue of subject matter jurisdiction but cite no convincing authority that this Court lacks subject matter jurisdiction over their residence or the payment obligations addressed in the confirmed Plan. In this District, property does not re-vest in Debtors upon confirmation but remains property of the estate. The real issue raised by Debtors in this case is Litton's standing to seek relief.

*res judicata* on the issue of Litton's rights as a party in interest with standing to bring the Motion. See In re Durham, 260 B.R. 383, 387 (Bankr. D.S.C. 2001) (discussing the binding effect of confirmation).[4] There was no evidence presented, through testimony or through the introduction of documents, to provide a reasonable basis for Debtors to doubt that Litton is the proper party to act on behalf of the mortgage creditor, whether it be Litton in its own right or as the agent of another.[5]

Litton's standing to bring the Motion is also evident from the record. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 608 (1990) (finding that the court must find standing based upon the record of the case). In this case, there is a proof of claim that identifies Litton as a party with rights in the note and mortgage. See Fed. R. Bankr. P. 3001(f) (stating that the evidentiary effect of the proof of claim is that the claim is *prima facie* evidence as to the validity and amount of the claim). Debtors have never challenged the proof of claim and, for the past three years, Debtors have recognized Litton as the proper party to act on behalf of the mortgage creditor, whoever that creditor may be, by sending payment to Litton. Additionally, Litton's standing is evident from the attachment of the note, a bearer instrument under South Carolina law, to the Motion.[6] See S.C. Code § 36-3-204(2) (West 2003); Woodberry, 383 B.R. at 377 (finding that possession of the bearer instrument is *prima facie* evidence of ownership, which need not be documented by written assignment). As in Woodberry, there is only a mere assertion by Debtors that the moving party lacks standing, an assertion which is contrary to the

---

[4] The Court is also convinced that the doctrines of collateral estoppel, equitable estoppel, waiver and admission could apply to bind Debtors on this issue.

[5] To the extent Debtors would seek to require testimony from Litton on the issue of standing, this request is denied as the issue has been determined by Debtors' confirmed Plan and Debtors offered no evidence that Litton's rights have been altered.

[6] As in Woodberry, Cantrell maintained in the Dismissal Motion that Litton had to "prove proper endorsement, transfer, and acceptance of the Note throughout the entire chain of title in order to be in lawful possession of the Note and Mortgage." This contention in the Dismissal Motion was rejected in Woodberry. See Woodberry, 383 B.R. at 377 ("ownership [of a bearer instrument] passes with delivery of the instrument and proof of ownership can be made by possession. No written assignment of the mortgage is required under state law").

4

entire record of this case. Finally, though Debtors purport to rely on alleged ambiguity or confusion in the assignment of the note and mortgage by the holders of those documents, no evidence was offered to refute the uncontradicted record that Litton is the responsible agent for receiving payment and acting on the mortgage holder's behalf and Debtors are bound by their Plan to pay Litton for the mortgage. This record is more than sufficient proof to find that Litton has standing to bring the Motion.[7]

Before leaving this matter, the Court is compelled to question whether Debtors' Dismissal Motion may have been lodged in an effort to delay these proceedings or raise costs to Litton as a means of inducing settlement. As noted above, the Dismissal Motion appears particularly inappropriate in this case. Considering Debtors' previous admissions, a question arises whether the Dismissal Motion was formed after a reasonable inquiry, as required by Fed. R. Banrk. P. 9011. Cantrell's attempt at the hearing to present Litton's attorney with proof of an additional payment by Debtors to Litton for credit against the indebtedness, coupled with Debtors' sworn schedules, the confirmed Plan, the uncontested proof of claim, the uncontested certification of facts, and Debtors' performance to Litton during the three years that this case has been pending should, at a minimum, alert Cantrell that his clients looked to Litton as the proper party in interest in this proceeding.[8] The Court also notes that the Dismissal Motion is styled nearly identical to motions routinely filed by Cantrell for other clients.[9] In <u>Woodberry</u>, Judge Duncan suggested that such motions, raised for purpose of delay, could be a violation of 28

---

[7] The attorney for Litton also represented that Litton was the proper party in interest and that he would obtain copies of any further documents necessary to satisfy any legitimate concerns regarding Litton's standing in this matter.

[8] Though Cantrell mentioned at the hearing on the Motion that the proof of claim may be fraudulent, there is also no indication that Cantrell made any inquiry with Litton, in the three years that this case has been pending, as to whether he correctly completed the Plan and schedules for Debtors by naming Litton as party in interest and thereby bound Debtors to pay Litton.

[9] See In re Ballard, 07-3203-W, Dismissal Motion (Bankr. D.S.C. May 19, 2008); In re Woodberry, C/A No. 07-05024-D, Dismissal Motion (Bankr. D.S.C. Jan. 12, 2008).

U.S.C. § 1927. See Woodberry, 383 B.R. at 377, n.4. Counsel in this District are cautioned that defenses to such motions, just as the motions themselves, must be asserted in good faith.

**II.    Cause to Lift the Automatic Stay**

Due to their failure to file an objection and a competing certification of facts, Debtors are deemed to have admitted the facts contained in Litton's certification of facts. See SC LBR 4001-1(a)(3). Moreover, Debtors bear the burden of proof on demonstrating that there is no cause to lift the automatic stay. See 11 U.S.C. § 362(g)(2); In re Maude H. Henderson and Daniel S. Henderson, IV Irrevocable Trust, C/A No. 08-01814-W, slip op. at 5 (Bankr. D.S.C. May 7, 2008). Litton's certification clearly indicates grounds to lift the automatic stay under 11 U.S.C. § 362(d)(1) for a failure to pay as required by the confirmed Plan and Debtors offered no evidence to the contrary. Debtors' failure to pay is further supported by their motion for a moratorium, filed February 14, 2008, which was granted by the Court and indicated the need to catch up on delinquent mortgage payments. While Litton's certification of facts indicated the presence of equity in excess of the lien, this Court recognizes the present slow sales rate for real estate in South Carolina and has previously recognized that the usual costs of liquidation should be considered in determining the presence of equity for purposes of 11 U.S.C. § 362(d). See In re Worthy, C/A No. 07-06712-W, slip op. (Bankr. D.S.C. Jan. 29, 2008); In re Loper, 367 B.R. 660, 663 (Bankr. D. Colo. 2007) (considering the usual costs of sale in determining that debtors lacked equity in their home). In this case, there appears to be insufficient equity in Debtors' home to adequately protect Litton in the absence of the resumption of payments.[10]

Finally, the Court notes Debtors have made a number of direct payments to Litton since July 14, 2005. According to the undisputed certification of facts, it appears that Debtors are

---

[10]    The Court must also recognize that the tactics pursued by Debtors, through counsel, in this case undoubtedly raise the costs for the mortgage holder, which are usually passed on to Debtors through the note and mortgage.

6

overdue for six payments as of July, 2008 (with the August payment approaching). In such situations, the Court often considers whether debtors can demonstrate that they have reasonable means of becoming current or providing adequate protection to the mortgage holder. However, Debtors' failure to appear and offer any evidence at the hearing on July 14, 2008 weighs against such an opportunity.

Therefore, considering the entire record in this matter, the Court shall grant the motion seeking relief from stay unless Debtors pay to Litton's counsel adequate protection payments, representing at least two months of regular payments, plus a payment of $100.00 towards a reasonable attorney's fee due to Litton pursuant to the note and mortgage, on or before July 31, 2008. Upon the failure to pay, counsel for Litton may submit a further affidavit attesting thereto and a proposed order for relief. Upon payment, this matter shall be continued for further consideration to a hearing on August 12, 2008 at 9:30 a.m. at the Donald Stewart Russell Federal Building, 201 Magnolia Street, Spartanburg, South Carolina.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
July 23, 2008